E-FILED
Friday, 17 July, 2015 04:19:20 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JAMES A. WEBB<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 1:14-cv-01258-JEH |

**Order and Opinion**

Now before the Court is the Plaintiff's, James A. Webb's, Motion for Summary Judgment (Doc. 14) and the Defendant's, Commissioner of Social Security's, Motion for Summary Affirmance (Doc. 19). For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS the matter for additional proceedings consistent with this Order and Opinion.[1]

**I**

In February 2011, Webb filed a Title XVI application for supplemental security income (SSI) and in April, 2011, he filed a Title II application for disability insurance benefits (DIB), alleging disability beginning on December 1, 2001. His claims were denied initially on August 8, 2011, and upon reconsideration on October 27, 2011. On December 12, 2011, Webb filed a request for hearing concerning his applications for DIB and SSI. A hearing was held before the Honorable Diane Raese Flebbe (ALJ) on November 7, 2012, at which time Webb was represented by an attorney. Following the hearing,

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 9) on the docket.

Webb's claims were denied. His request for review by the Appeals Council was denied on February 20, 2014, making the ALJ's decision the final decision of the Commissioner. Webb filed the instant civil action seeking review of the ALJ's decision on June 27, 2014.

## II

At the time he applied for benefits, Webb was 45 years old living in East Peoria, Illinois. He had completed his GED and previously worked as a cook, dishwasher, truck driver, and mail sorter. He spent a number of years in prison for manufacturing methamphetamines. It was while he was in prison that Webb testified he was put on medication for his mental health issues. When he went off of them in prison, he would have a psychotic break. Even when he continued on the medication, Webb would still have some problems. It was also while he was in prison that Webb broke his left hand while playing soccer.

At the time of the hearing, Webb was 5'11" and weighed about 300 pounds. He testified that he was living in his family home, as his mother was in a nursing home sick with cancer. Webb lived with a roommate who was a buddy of his. At home, he shared doing the dishes with his roommate, he mowed the yard though the mower kept breaking, he did some cooking, and he did his own laundry. There was a cleaning lady who came to his house once every two weeks to pick up stuff around the house, and she was paid by Webb's sister, Bonnie Lovell. Although he had a license, Webb did not have a car. He therefore only left the house when someone came to give him a ride. He otherwise had no hobbies except for fishing which he could only do if someone gave him a ride.

Webb further testified that he had three children still living and one deceased child who committed suicide. Webb's 16 year old would come over to Webb's house to spend the weekend and the two of them would play board

games and hang out. He testified that after his one son committed suicide, Webb was sent "over the edge" and that he continued to struggle with his son's death. He also testified that he could not use his left hand very much after breaking it in prison.

The ALJ then questioned the Vocational Expert (VE), Dennis Gustafson. The ALJ asked the VE to initially assume an individual who was able to perform unskilled work with only occasional work interaction with coworkers and supervisors, no work interaction with the general public, and no fast paced production demands. The VE responded "no" to the ALJ's question of whether Webb would be able to perform any of his past work. The ALJ next asked the VE whether a hypothetical individual with the above listed limitations and Webb's age, education, and work history would be able to perform other jobs. The ALJ responded in the affirmative and identified the job of building cleaning. The ALJ further restricted the hypothetical individual to work done independently rather than as a member of a team and asked whether that would change any of the identified jobs. The VE responded that it would not change any of the identified jobs at the medium exertion level. When the ALJ asked the VE if the identified jobs would be impacted by the individual missing two days or more a month, the VE responded that such missed days would eventually result in lost employment. The VE also responded that there would be no jobs for the individual who, by the end of the day, would likely be off task 20 percent of the day or more.

Webb's attorney asked the VE whether an individual who had good attendance for two or three months, but then was gone for a week, would be able to maintain employment. The VE responded that if such a thing happened four times a year, by the end of nine months or a year, the individual would no longer have a job. The VE also responded that lost employment would result for an

individual who needed continual re-demonstration of a task that was part of the individual's job.

### III

In her Decision, the ALJ found that Webb had the severe combination of impairments of bipolar mental disorder, a rage disorder, drug and alcohol abuse, and obesity. The ALJ noted that Webb's medical records reflected a history of wrist injury from 2007, but the ALJ concluded that there were no objective findings to support ongoing limitations as a result of that past wrist injury and thus the record did not support a finding that the impact of the wrist injury on Webb's functioning was more than minimal. The ALJ also referenced Webb's statements about the length of time he used cocaine and when he learned to make meth. The ALJ discussed that Webb spent a number of years in prison during which time he was diagnosed with drug and alcohol abuse and a grief reaction due to his son's death. The ALJ rejected Webb's credibility on the issue of current drug and alcohol use, and the ALJ provided reasons for why she rejected his testimony on that issue.

The ALJ next found that if Webb stopped substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and therefore Webb would continue to have a severe impairment or combination of impairments. (AR 30). Then the ALJ found that if Webb stopped substance use, he would not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.

The ALJ made the following RFC assessment:

If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except unskilled work with no fast-paced production demands and no work interactions with the general public and only occasional work interactions with co-

> workers and supervisors, performing work independently rather than as a member of a team.

(AR 31). The ALJ's RFC assessment was made after consideration of: medical evidence regarding Webb's obesity; credibility factors including pain, hospital visits, prescription medications, and daily activities; Webb's limitations posed by bipolar mental disorder and rage disorder (independent of drug and alcohol abuse); Webb's own testimony about his interactions with family and the public; medical records regarding mental symptoms when on his medication versus when he was off his medication; various opinion evidence including global assessments of functioning (GAF) scores and Webb's sister's and his brother (Silas's) opinions; a consultative psychological exam completed by Dr. Alan Jacobs in June 2011; Webb's activities of daily living; State Agency physicians' opinions; and Webb's medical expert Dr. Julian Freeman, M.D.'s opinion.

The ALJ also found that if Webb stopped the substance use, considering his age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that Webb could perform including the representative occupation of commercial cleaner. Finally, the ALJ found:

> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use . . . Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time form the alleged onset date through the date of this decision.

(AR 36).

### IV

Webb raises the following issues: 1) whether the ALJ violated SSR 96-7p and 06-03p when making his credibility determination; 2) whether the ALJ's

insufficient evaluation of a medical source's opinion warrants reversal of the ALJ's decision; 3) whether the ALJ improperly determined that drug and alcohol abuse was material to disability; and 4) whether the ALJ's RFC determination was improper after rejecting all mental health medical opinions and not requesting a physical medical opinion.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. See *Schmidt v Apfel*, 201 F3d 970, 972 (7th Cir 2000); *Pugh v Bowen*, 870 F2d 1271 (7th Cir 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."   42 USC § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v Barnhart*, 297 F3d 589, 593 (7th Cir 2002).  The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v Bowen*, 782 F2d 79, 82 (7th Cir 1986).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v Perales*, 402 US 389, 390 (1971), *Henderson v Apfel*, 179 F3d 507, 512 (7th Cir 1999). Furthermore, determinations of credibility made by the ALJ will not be overturned unless the findings are clearly erroneous. *Anderson v Bessemer City*, 470 US 564, 573 (1985); *Imani v Heckler*, 797 F2d 508 (7th Cir 1986), cert denied, 479 US 988 580 (1986).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled.  Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is

eligible for disability. See 20 CFR §§ 404.1566, 416.966 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 USC § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v Califano*, 614 F2d 142, 143 (7th Cir 1980). The factual determination is made by using a five-step test. See 20 CFR §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

Id. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v Schweiker*, 732 F2d 605 (7th Cir 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v Heckler*, 779 F2d 1250 (7th Cir 1985); *Halvorsen v Heckler*, 743 F2d 1221 (7th Cir 1984).

Finally, if it is found that the claimant is disabled and there is medical evidence of drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 CFR §§ 404.1535, 416.935. In making that determination, the ALJ will examine whether the plaintiff would still be found disabled if the plaintiff stopped using drugs or alcohol. Id.

In the present case, Webb claims error on the ALJ's part at Step Four and the final, additional step regarding drug and alcohol use.

**A**

Webb argues that the ALJ improperly determined drug and alcohol abuse was material to disability. He contends that the ALJ failed to consider whether his bipolar disorder was the cause of his substance abuse; that the evidence established extensive mental illness while Webb was not under the influence of drugs and/or alcohol; and the ALJ did not point to any evidence supporting her "claim" that Webb would not be disabled if not for his drug and alcohol abuse. The Commissioner argues that the natural inference the ALJ made from the evidence of record was that Webb's substance abuse caused him to stop taking medication, but that when he took his medication, his symptoms were well-controlled. The Commissioner further argues that in any event, the fact that Webb had severe mental impairments did not necessarily translate to work related limitations. In reply, Webb points out that neither the ALJ nor the Commissioner provide any explanation or cite to any medical record which

8

suggest Webb was less impaired when he was not using drugs, and nothing in the record suggests that any doctor was of the opinion that Webb's mental illnesses were merely symptoms of drug and/or alcohol abuse.

> 20 CFR § 404.1535 and 20 CFR § 416.935 provide:
>
> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

Here, the ALJ found, "[T]he record shows drug and alcohol abuse is the claimant's primary impairment; significant mental symptoms are consistently noted in conjunction with substance abuse, or at times when the claimant was not taking medications as prescribed." (AR 33). From there, the ALJ proceeded to identify evidence in the record limited to Webb's mental health issues while

off his medications or when he tested positive for substance abuse. Therefore, in order to make sense of the ALJ's finding that substance use was material to Webb's disability finding, the ALJ must have inferred from the evidence that Webb's substance use caused him to stop taking medication which then caused him to experience significant mental symptoms. In fact, the Commissioner argues that the "natural inference" was that the ALJ concluded that Webb's substance abuse caused him to stop taking his medication. Certainly, the "natural inference" identified by the Commissioner is the one that must be made in order to make sense of the ALJ's materiality finding. However, none of the cited evidence suggests that Webb's substance use *caused* him to experience mental symptoms, "significant" or otherwise.

The question for the Court upon review of the ALJ's Decision is whether the inference the ALJ actually made is a logical one that can be gathered from substantial evidence of record. It cannot for two reasons. First, neither the ALJ nor the Commissioner cited or discussed any evidence of record that revealed Webb's mental impairments were due to his abuse of drugs and alcohol. Second, and to the contrary, there is evidence of record which shows that Webb used drugs and/or alcohol because of his mental health issues. In fact, some of the medical evidence the ALJ cited included that while Webb was experiencing mental symptoms, he was negative for drugs and alcohol or reported that he had not used drugs or alcohol recently. Also, none of the cited evidence provided that Webb's substance use *caused* him to stop taking his medication. Nowhere in § 404.1535 or § 416.935 is an ALJ tasked with considering medication use when evaluating which of a claimant's current physical and mental limitations would remain if the claimant stopped using drugs or alcohol. Substantial evidence does not support the ALJ's finding that independent of drug and alcohol abuse, Webb did not have a disabling mental condition where most of the evidence cited in

support of that finding pertained to Webb's failure to use his prescribed medication.[2]

Ultimately, the ALJ did not expressly find Webb's drug and alcohol use caused him to stop taking his medication which in turn caused his "significant mental symptoms." (AR 33). Nor is the Court willing to infer such a finding by the ALJ as the Commissioner invites; the evidence of record logically supports an inference contrary to the one urged by the Commissioner. The materiality finding therefore is not supported by substantial evidence.

**B**

**1**

Webb takes issue with the ALJ's refusal to credit his testimony. Webb argues that the ALJ rejected his testimony based on his activities of daily living, though the ALJ did not point to any evidence which showed how those activities indicated his ability to concentrate and remember tasks well enough for him to maintain employment. The Commissioner disputes that the ALJ erroneously relied upon Webb's daily activities where the Social Security regulations provide that an ALJ should consider a claimant's daily activities in assessing credibility. The Commissioner also contends that nowhere in the ALJ's decision did she indicate that she relied solely on Webb's daily activities in concluding that he was capable of unskilled work. The Commissioner points out that the ALJ found that the objective evidence reflecting Webb's periods of sobriety and medication compliance conflicted with his claims of disabling mental impairments. Webb counters that the ALJ provided no explanation concerning how Webb taking care

---

[2] The ALJ's error in considering Webb's use or non-use of his prescribed medication in conjunction with his drug and alcohol use is not made harmless by the fact that Webb's severe mental impairments did not necessarily translate to work related limitation. The Commissioner's argument in that respect glosses over the fact that the ALJ found that Webb would continue to have a severe impairment or combination of impairments that would "cause more than a minimal impact on [his] ability to perform basic work activities," even if he stopped the substance abuse. (AR 30).

11

of his mom, completing household chores, playing board games with his son, and enjoying fishing was suggestive of his ability to maintain concentration and memory greater than what he alleged.

Determinations of credibility made by the ALJ will not be overturned unless the findings are patently wrong. *Shideler v Astrue*, 688 F3d 306, 310-11 (7th Cir 2012). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v Barnhart*, 442 F3d 536, 538 (7th Cir 2006) (citation omitted). SSR 96–7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record" and that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." An ALJ should consider elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, "functional limitations," and treatment (including medication). *Scheck v Barnhart*, 357 F3d 697, 703 (7th Cir 2004); *Rice v Barnhart*, 384 F3d 363, 371 (7th Cir 2004). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele v Barnhart*, 290 F3d 936, 942 (7th Cir 2002).

Here, the ALJ's finding as to Webb's credibility was in accordance with SSR 96-7p and was otherwise grounded in observations that were on the whole supported by the record evidence. In her Decision, the ALJ considered objective medical evidence of Webb's impairments, his daily activities, the absence of pain allegations, and the fact that he took medication to control his mental health impairments. In this instance, the ALJ's discussion of Webb's medication compliance and its conflict with his claims of disabling mental impairments was sufficiently supported and properly done in accordance with Social Security

regulations. The ALJ did not make a "patently wrong" credibility finding for the aforementioned reasons.

2

Webb also challenges the ALJ's rejection of his brother Silas Webb's testimony. He argues that his brother Silas's testimony comported with the medical evidence and his own testimony concerning his limitations. Again, the Court does not find that the ALJ's credibility determination regarding Silas Webb was patently wrong. The ALJ stated, "The undersigned has also considered the opinions of the claimant's family members. These too are found not dispositive. Reports from the claimant's sister and brother are given little weight . . . because they do not account for the claimant's drug and alcohol abuse." (AR 34). SSR 06-03p provides in relevant part:

> In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

Webb also cites to the portion of SSR 06-03p which provides that "other sources" may have information based upon special knowledge of the individual that may provide insight into the severity of impairments and how they affect the individual's ability to function. Here, while the ALJ did not go through every factor provided in SSR 06-03p, the one reason she did provide for rejecting Silas's opinion was both reasonable and supported by the record. One would expect that Silas would have made reference to his brother's drug and alcohol use in one way or another. Indeed, the record is replete with references to Webb's drug and alcohol use where he stated he had previously used drugs and alcohol and

where he tested positive for drugs and/or alcohol. Silas's failure to mention alcohol or drug use suggests either that he was trying to assist his brother in obtaining Social Security benefits by not mentioning the substance use or that Silas was not as familiar with his brother's health and circumstances as Silas would have the ALJ believe. Therefore, the Court can trace the path of reasoning from the evidence of record to the ALJ's finding that Silas Webb was not credible where he did not account for Webb's drug or alcohol use.

### 3

For the same reason that the ALJ rejected Silas's testimony, the ALJ sufficiently evaluated the medical opinion of Julian Freeman, M.D. 20 CFR § 404.1527(c) provides:

> How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

The listed factors include: 1) examining relationship; 2) treatment relationship, which in turn includes length of the treatment relationship and the frequency of examination, and the nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors brought to the Social Security Administration's attention. Id.

Webb argues that the ALJ erroneously gave no weight to Dr. Freeman's opinion based upon the incorrect reason that Dr. Freeman failed to consider the impact of Webb's drug use. Webb further argues that the ALJ erroneously rejected Dr. Freeman's opinion based upon the mere fact that he did not treat or examine Webb. The Commissioner emphasizes the fact that the ALJ was not required to give controlling weight to Dr. Freeman's opinion because he was not a treating physician. The Commissioner also emphasizes that the ALJ's decision

to reject Dr. Freeman's opinion for his failure to consider Webb's history of substance abuse was appropriate where the Social Security Act precludes an award of benefits to a claimant whose substance abuse is a material factor contributing to the determination of disability. The Commissioner last argues that the ALJ had no obligation to re-contact Dr. Freeman where the ALJ had no doubts about what Dr. Freeman did or did not consider about Webb's drug use. Webb argues in reply that the ALJ simply failed to consider the factors as required by 20 CFR § 404.1527(c) when determining the weight to give Dr. Freeman's opinion.

The Commissioner is correct that the ALJ's decision to reject Dr. Freeman's opinion for his failure to consider Webb's "long and significant history of substance abuse" was proper. Once again, one would expect that Dr. Freeman would have referred to Webb's use of alcohol and drugs given the recurring evidence of Webb's substance abuse in the record. His failure to do so suggests that Dr. Freeman was trying to assist Webb in obtaining Social Security benefits or he was not as familiar with Webb's medical and social history as he portrayed to the ALJ.

The ALJ did also sufficiently articulate and consider the evidence of record to support her finding that Dr. Freeman's opinion was entitled to little weight in regard to Webb's wrist injury. Webb argues that the ALJ did not point to any evidence which undermined Dr. Freeman's opinion concerning Webb's limitations due to his left wrist injury. The ALJ did, however, point to the *absence* of evidence that undermined Dr. Freeman's opinion regarding Webb's wrist.

Here, the ALJ explained that while Dr. Freeman attributed limitations to Webb based upon his history of left wrist injury, "the medical record [did] not document any ongoing problems, clinical signs and findings or functional deficits as a result and [the wrist injury was] not even considered a severe

impairment." (AR 35). The ALJ fulfilled her obligation to sufficiently articulate her assessment of the evidence. See Carlson v Shalala, 999 F2d 180, 181 (7th Cir 1993) (explaining that the ALJ is required to sufficiently articulate her assessment of the evidence to assure the court that the ALJ considered the important evidence). Of course, the ALJ in this case was not required to discuss every piece of evidence. Id.

C

Finally, Webb argues that the ALJ's RFC determination was flawed because she rejected all medical evidence of Webb's mental impairments and then failed to explain how her limitations were supported in the record. The Commissioner counters that it is the ALJ's responsibility and not a doctor's to assess a claimant's RFC. The Commissioner also argues that the ALJ properly considered the entire record in formulating her RFC, including medical records showing Webb's symptoms subsided when he was sober and medication compliant. In reply, Webb argues that the ALJ crafted a mental RFC without the benefit of any mental health professional's opinion or citation to any evidence in the record that supported the specific RFC. Webb further argues that the physical RFC was crafted based upon medical records that pre-dated his wrist injury and the ALJ otherwise created an evidentiary deficit which was used to support her physical RFC finding.

SSR 96-8p provides, "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." See also Briscoe ex rel Taylor v Barnhart, 425 F3d 345, 352 (7th Cir 2005) (stating that the ALJ's omission in not explaining how he arrived at his RFC conclusions, contrary to SSR 96-8p, was sufficient to warrant reversal of his decision). Here, the ALJ provided a detailed narrative describing how the

evidence supported her conclusions and how the *lack* of medical evidence supported her conclusions that Webb's mental and physical impairments were not as limiting as he alleged. Albeit it detailed enough to trace the path of the ALJ's reasoning, the entirety of the ALJ's RFC conclusion is premised upon her finding that Webb's substance use was material to a disability finding. In other words, the ALJ's RFC assessment was clouded by her conclusion that Webb's substance use was material to a disability finding. At this time, the Court does not find that the ALJ's RFC was not supported by substantial evidence. Rather, in the event the ALJ finds that Webb's substance use is not material to a disability finding upon remand, her RFC assessment may require adjustment.

## V

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment (Doc. 14) is GRANTED, the Commissioner's Motion for Summary Affirmance (Doc. 19) is DENIED, and the matter is REMANDED pursuant to sentence four of 42 USC § 405(g) for the ALJ to fully explain her finding on the materiality of Webb's substance abuse to the finding of disability and to cite with specificity the evidence of record which supports the ALJ's finding. The Clerk's Office is hereby directed to enter Judgment in favor of the Plaintiff and against the Defendant. This matter is now terminated.

*It is so ordered.*

Entered on July 17, 2015.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE